UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED KORNER,

    Plaintiff,

-vs-

Case No. 09-12564
HON. AVERN COHN

CITY OF STERLING HEIGHTS, and
CRAIG COLE,

    Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT CITY OF STERLING HEIGHTS' MOTION FOR SUMMARY JUDGMENT
## AND
## GRANTING IN PART AND DENYING IN PART DEFENDANT COLE'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a civil rights case brought under 42 U.S.C. § 1983 and pendent state law. Defendant City of Sterling Heights (City) is a municipal entity. Defendant Craig Cole (Cole) is a City police officer. Plaintiff Alfred Korner (Korner) was arrested by Cole on September 9, 2007. Korner claims that Cole violated his civil rights because during the arrest he used excessive force on him; unlawfully seized him; was grossly negligent in handling him; and committed an assault and battery on him.[1] Korner further claims that the City is liable because it failed to train Korner in the proper way to conduct an arrest. Cole and the City respond that the arrest was lawful and that they are entitled to qualified and governmental

---

[1] Korner's complaint also names Richard Mertz, another City police officer. (Doc. 1). Mertz filed a motion for summary judgment on May 2, 2011. (Doc. 21). However, on June 1, 2011, a stipulated order of dismissal as to defendant Mertz only was entered by the Court. (Doc. 26). Thus, Mertz's motion is deemed moot.

immunity.

Now before the Court are defendants' motions for summary judgment.[2] For the reasons that follow, the City's motion will be granted, and Cole's motion will be granted in part and denied in part.

## II. BACKGROUND

On September 9, 2007, Korner was stopped by Cole on a suspicion of running a red light. After pulling his vehicle over to the shoulder of the road, Korner exited his vehicle and approached Cole's police vehicle. Cole rolled down the window of his vehicle at which time Korner asked Cole what he had done to warrant the stop. Cole responded that Korner had gone through a red light and further instructed him to return to his vehicle; Korner complied. While walking back to his vehicle, however, Korner further inquired about the stop to Cole, asking him what red light he ran. Cole did not respond to the question. Still walking back to his vehicle and nearing the rear bumper, Cole ordered Korner to put his hands behind his head.

What happened next is disputed. According to Korner, he complied with Cole at which time Cole arrested him by "swiftly" applying handcuffs, without resistance from Korner. According to Cole, Korner resisted being handcuffed when he was in a standing position. As a result, Cole said he put Korner face down on the ground using a "take-down" or "tackling" maneuver. He then placed his knee on the middle of Korner's back, in order to secure the handcuffs.

---

[2] Neither party complied with the Court's motion practice guidelines for a motion for summary judgment. In particular, the parties did not file a joint statement of material facts in dispute. Nevertheless, the record is sufficiently complete so as to enable a decision on the defendants' motions.

Regardless of when the handcuffs were applied, Korner further states that the they were too tight, causing him to suffer wrist injuries. Particularly, he says that when he was on the ground the tightness of the handcuffs caused his wrists to bleed and his thumb nerves to be pinched which caused numbness. Korner asserts that he told Cole that the handcuffs were too tight. He does not state whether Cole responded to his complaint, but says that the handcuffs were not removed until he arrived at the jail at which time a "jailer" removed them. According to Cole, he adjusted the handcuffs in response to Korner's complaint, an assertion that he says is supported by the police vehicle's in-camera video.

After arresting Korner, Cole called for back-up and a fellow City police officer, Richard Mertz (Mertz), along with other City police officers, arrived on the scene. Cole handed custody of Korner over to Mertz and had no further contact with him.

Korner was charged with felony resisting arrest and obstructing a police officer, and was issued a traffic citation. Korner later plead no contest to disorderly conduct, a misdemeanor.

As a result of the events surrounding the arrest, Korner claims to have suffered: head trauma, evidenced by his facial injuries and blurred vision in his left eye; wrist discomfort; and extreme anxiety. He further claims that his left eye vision has progressively worsened since the arrest. In support of the claims of injury, Korner proffers photographs and medical record evidence. (Docs. 24-4, 24-5, 24-6).

### III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material

fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. Muhammad v. Close, 379 F.3d 413, 416 (6th Cir. 2004).

However, the nonmoving party may not rest upon his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson, 477 U.S. at 252. Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

Finally "[a]lthough the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading . . . a verified complaint or additional affidavit . . . satisfies the burden of the nonmovant to respond." Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## IV. ANALYSIS

### A. § 1983: Excessive Force

Korner first claims that Cole used excessive force while handcuffing him and by tackling him down to the ground during the arrest. "Whether an officer has exerted excessive force during the course of seizure is determined under an 'objective reasonableness' standard." Morrision v. Board of Trustees of Green Tp., 583 F.3d 394, 401 (6th Cir. 2009) (the Fourth Amendment's unreasonable seizure jurisprudence is applied when analyzing excessive force claims) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). The objective reasonableness standard of the defendant's conduct, "'depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.'" Grawey v. Drury, 567 F.3d 302, 310 (6th Cir. 2009) (quoting Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007)). The most important factors to consider in determining the objective reasonableness of the force used are:

> 1) the severity of the crime at issue;
> 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and
> 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.

Grawey, 567 F.3d at 310. "The standard 'contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'" Wysong v. City of Heath, 260 Fed. Appx. 848, 854 (6th Cir. 2008) (quoting Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002)).

1. Handcuffs

As to Korner's claim of excessive force in the use of the handcuffs, "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." Morrison, supra, at 401 (citation omitted). In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that:

>   (1) he or she complained the handcuffs were too tight;
>   (2) the officer ignored those complaints; and
>   (3) the plaintiff experienced "some physical injury" resulting from the handcuffing.

Id. (citing Lyons v. City of Xenia, 417 F.3d 565, 575–76 (6th Cir. 2005)).

Here, Korner claims that he satisfies the above elements in order to survive summary judgment. Particularly, he says he complained to Cole that the handcuffs were too tight. While he does not specifically assert that Cole ignored his complaints, he testifies that a jailer, not Cole, was the one who removed the handcuffs after he again complained that they were too tight.[3] Finally, Korner says he experienced physical injury from the handcuffs, evidenced by the pictures of his injured wrists and his medical records which describe that Korner reported pain and numbing to his wrists due to the handcuffs. (Docs. 25-5, 25-6).

Cole's deposition testimony does not address the issue of Korner's handcuff pain. However, in his motion brief, Cole denies that he ignored Korner's complaint, and points

---

[3]Korner initially testified that he told Mertz that the handcuffs were too tight. However, after further questioning, Korner said that it was Cole that he told. See Doc. 25-2, pp. 23, 26).

to the police vehicle's in-camera video which Cole says shows him adjusting the handcuffs, i.e., not ignoring Korner's complaints that they were too tight. Cole's argument lacks merit.

In viewing the in-camera video, the Court failed to see any indication of Cole adjusting Korner's handcuffs. Rather, the only visible footage of Cole and Korner merely shows Korner being walked to what appears to be Mertz's police vehicle already handcuffed. The video does not show Cole adjusting Korner's handcuffs. Thus, a genuine issue of material fact exists as to whether Cole used excessive force in applying the handcuffs and summary judgment is not warranted on this issue.

### 2. Tackle

As to Korner's claim of excessive force due to Cole tackling him to the ground, the law states that if a suspect resists arrest, a police officer may use such force in order to mitigate the likelihood of violence or to prevent the suspect from fleeing. See Wysong, supra, at 854-55 (citing Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002) (police had a right to use force when arresting a suspect when he resisted by twisting and turning); Goodrich v. Everett, 193 Fed. Appx. 551, 556-57 (6th Cir. 2006) (holding that even if officers were "kneeing and kicking" the plaintiff while handcuffing him, the force was not unreasonable in the context of an arrest where a reasonable officer could have concluded that the plaintiff was "capable of violence and intended to flee"); Schliewe v. Toro, 138 Fed. Appx. 715, 721-22 (6th Cir. 2005) (holding that a punch resulting in a broken jaw was a reasonable use of force when the suspect was moving erratically and apparently attempting to escape)).

However, when a suspect is handcuffed and compliant, i.e., where there is not a risk of violence or of the suspect fleeing, an officer's use of force "can easily be excessive."

Wysong, supra, at 855 (citing Smoak v. Hall, 460 F.3d 768, 784 (6th Cir. 2006) (finding it unreasonable to tackle a cuffed and compliant suspect); McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding that a blow to a cuffed, unresisting suspect was unreasonable)).

Here, Korner and Cole dispute whether Korner was handcuffed and compliant at the time Korner was tackled to the ground. Korner says he was compliant and that he did not resist arrest, i.e., that was handcuffed without incident and that the handcuffing occurred swiftly. He does admit that Cole asked him to stop squirming. However, he says Cole made this statement after he was already handcuffed and on the ground. In further support of his claim that the takedown was excessive, Korner proffers photographs and medical records demonstrating the injuries that he suffered to his face and left eye after he hit his head on a rock causing his glasses to fall off. (Docs. 25-4, 25-6).

On the other hand, Cole says that Korner resisted, and that he was not handcuffed at the time he took him down to the ground. Indeed, he says that he had to tackle him to the ground in order to get the handcuffs on, and to secure Korner.

The law is clear that if Korner's story is correct, Cole's use of force was excessive. See Wysong, supra, at 855. If Cole's story is correct, the force used was not excessive. Id. As with the handcuffing, Cole's in-camera video may have aided the Court in determining the correct sequence of events. See Scott v. Harris, 550 U.S. 372, 380-81 (in deciding summary judgment on an excessive force claim, court may view facts in the light depicted by videotape that captured underlying events). However, the events of the arrest occurred outside of the in-camera video's range thus it is not helpful in resolving the factual dispute. Accordingly, because the case turns on whether Korner was handcuffed prior to

being tackled to the ground, and because Korner and Cole have differing accounts of this dispositive fact, a genuine issue of material fact exists. Thus, summary judgment is not warranted on this issue.

### B. § 1983: False Arrest/Unlawful Seizure

Korner next claims that he was falsely arrested and unlawfully seized. To prevail on a false-arrest claim, Korner must show that defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so." Walsh v. Taylor, 263 Mich. App. 618, 689 (2004). "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." Id. at 514 (citations and internal quotation marks omitted). Critically, false imprisonment and unlawful seizure claims also require that "[t]he restraint . . . occurred without probable cause to support it." Id.; see also Beck v. Ohio, 379 U.S. 89, 91 (1964) ("[w]hether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense).

Here, Cole arrested Korner because of a safety concern: Korner exited his vehicle after a traffic stop, approached Cole's police vehicle, and – while walking away back to his own car – appeared to continue to dispute the traffic stop with Cole in a seemingly argumentative fashion. Following the arrest, Korner plead no contest to a misdemeanor disorderly conduct charge. Regardless of whether the arrest itself was executed lawfully,

9

Korner has not demonstrated that Cole lacked probable cause to make the arrest. Indeed, a no contest plea relating to an arrest can be fatal to a false arrest claim. See McCartt v. Keyes, 194 F.3d 1313, 1999 WL 1000829, *5 (6th Cir. Oct. 25, 1999) ("The district court was clearly correct in holding that [plaintiff's] plea of nolo contendere to the charge of disorderly conduct precludes him from now bringing a claim under § 1983 that his arrest for disorderly conduct was without probable cause."). Further, while it is true that Korner was arrested for felony resisting arrest, but plead no contest to a lesser misdemeanor disorderly conduct, the violations are sufficiently similar to preclude a false arrest claim. Compare id., supra, at *5 ("district court was also correct in holding that [plaintiff's] nolo plea [to disorderly conduct] does not bar him from asserting the unreasonable seizure and excessive force claims") (emphasis added).

Thus, because Korner has not demonstrated that Cole lacked probable cause in arresting him, Cole is entitled to summary judgment on Korner's false arrest and unlawful seizure claims.

### C. Qualified Immunity

Cole argues that he is entitled to qualified immunity to Korner's § 1983 claims. "Qualified immunity shields government officials performing discretionary functions from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" See Morrison, supra, at 400 (quoting Feathers v. Aey, 319 F.3d 843, 847 (6th Cir.2003); Harlow v. Fitzgerald, 457 U.S. 800, 818)). "A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant

violated a constitutional right; and (2) the right was clearly established." Id. (citing Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir.2008) (citing Saucier, 533 U.S. at 201)). "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Thus, the relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202).

"Generally, summary judgment based on qualified immunity is proper if the officer was not on notice that his conduct was clearly unlawful." Bletz v. Gribble, 641 F.3d 743, 749 (6th Cir. 2011). "However, if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper." Id.

Here, a genuine issue of material exists as to whether Cole's use of force in handcuffing and tackling Korner was excessive. Thus, Cole is not entitled to qualified immunity. Bletz, supra; see also Bomar v. City of Pontiac, __ F.3d __, 2011 WL 2585623, *2, 4 (6th Cir. July 1, 2011) (dismissing qualified immunity appeal for lack of jurisdiction when genuine issues of material fact existed as to whether excessive force was used) (quoting Berryman v. Rieger, 150 F.3d 561, 564-65 (6th Cir. 1998) ("Once a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial.")).

### D. Gross Negligence

Korner also claims that Cole's conduct during the arrest was grossly negligent. Under Michigan law, "[g]ross negligence means conduct so reckless as to demonstrate a

substantial lack of concern for whether an injury results." Trethewey v. Stimac, 2010 WL 3583082, *8 (E.D. Mich. 2010) (quoting M.C.L. § 691.1407(7)(a)). However, the Sixth Circuit has held that gross negligence is not an independent cause of action when claiming excessive force under § 1983. Bletz, supra, at 756 (reversing district court's denial of summary judgment on a gross negligence claim because "[t]he only cause of action available to plaintiff for allegations [that gross negligence constitutes excessive force] would be for assault and battery) (citing Livermore v. Lubelan, 476 F.3d 397 (6th Cir.2007) (rejecting gross-negligence claim against an officer-defendant because it was "undoubtedly premised on the intentional tort of battery" where it was based on a shooting that resulted in death)).

Thus, under Betz, supra, Cole is entitled to summary judgment on the gross negligence claim.

### E. Assault and Battery

According to Michigan law, an assault is defined as "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." Grawey v. Drury, 567 F.3d 302, 315 (6th Cir. 2009) (citing People v. Nickens, 470 Mich. 622, 685 (2004)). A battery is defined as "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." Id.

Here, in order for Korner to prevail on his assault and battery claim, he must show that Cole's actions "were not justified because they were not objectively reasonable under the circumstances" Van Vorous v. Burmeister, 262 Mich. App. 467, 482 (2004). Similar to the excessive force claims, because there is a genuine issue of material fact about

12

Cole's use of force, Cole is not entitled to summary judgment on the assault and battery claim.

### F. Governmental Immunity

Cole says he is entitled to governmental immunity relating to Korner's state law claims. "In Odom v. Wayne County, 482 Mich. 459 , 760 N.W.2d 217, 228 (2008), the Michigan Supreme Court stated that the proper method for determining whether governmental immunity applies to intentional torts, such as assault and battery, is to apply the test set forth in Ross v. Consumers Power Co., 420 Mich. 567, 363 N.W.2d 641, 647 (1984)." Bletz, supra, at 757. "Under the Ross test, an [officer] enjoys a right to immunity if:"

> (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority;
>
> (2) the employee undertook the challenged acts in good faith or without malice; and
>
> (3) the acts were discretionary, rather than ministerial, in nature.

Id.

"Defendants bear the burden of establishing their entitlement to immunity from plaintiff's state-law claims." Id. Further, "[u]nlike qualified immunity under federal law, which uses an objective standard, '[t]he good-faith element of the Ross test is subjective in nature. . . . [i]t protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.'" Id. (quoting Odom, N.W.2d at 229). Therefore, "[t]he proponent of individual immunity must establish that he acted without malice." Id.

13

Here, viewing the evidence in the light most favorable to Korner, a reasonable jury could conclude that Cole acted in bad faith when he handcuffed Korner so tightly that the handcuffs caused bleeding and bruising, and when he tackled Korner to the ground while handcuffed and compliant, causing head injuries. Thus, Cole is not entitled to governmental immunity relating to the assault and battery claim.

### G. § 1983: Failure to Train

Finally, Korner asserts that the City is liable for Cole's acts on the ground that it failed to properly train him on how to make an arrest. Under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978), a local government may be liable as an entity when "execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. To find municipal liability, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Gardner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1983).

Korner has not cited a specific policy that, when executed by Cole, caused Korner's injuries. Nor has Korner proffered any evidence that the City failed to train Cole on how to make an arrest. While Korner points to the fact that Cole did not receive specific training relating to "tackling" techniques, such as that applied during Korner's arrest, the argument lacks merit, as Korner has not demonstrated that Cole's tackling technique was an execution of a City policy. In other words, Korner's acts cannot be tied to the City in such as way so as to find it liable for causing injury to Korner. Thus, the City is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated above, the motion is GRANTED and case DISMISSED as to the claim against the City. The motion is also GRANTED and case DISMISSED as to the false arrest, unlawful seizure, and gross negligence claims against Cole. Finally, the motion is DENIED as to the excessive force and assault and battery claims against Cole. The record is such that the case should proceed to trial on these issues.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: July 25, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 25, 2011, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160